# CASES

# SUPREME JUDICIAL COURT

## THE COUNTY OF WALDO, JULY TERM, 1831.

---

## JOHNSON *vs.* RICE.

Where land, being mortgaged, was afterwards sold by the mortgagor, the grantee agreeing to pay off the mortgage, and giving to the creditor his own notes with a surety, as collateral to the original debt, which still subsisted; and the surety in this new security was afterwards sued, and the demand settled by compromise for a much less sum, the party being poor and the debt doubtful; and the grantee of the mortgagor being present and not objecting;—it was held that the mortgagee was accountable for no more than he actually received; but that out of this sum the costs of suit should not be deducted.

If the mortgagee release to a stranger his title to part of the mortgaged premises, with the assent of the mortgagor, the residue of the land is still charged with the whole debt.

But if the mortgagor alien the land in severalty to divers purchasers, and the mortgagee release to one of these without the assent of the others, his lien is *pro tanto* extinguished.

THIS was a bill in equity to redeem a part of certain mortgaged premises; and was brought by the assignee of the mortgagor, against the mortgagee. The bill stated that one *Warren* mortgaged certain premises, being fifty acres of land, to the defendant, *July 23,*

1811, to secure the payment of four promissory notes, amounting to $231 ;—that *Warren* conveyed the same land *June* 23, 1812, to *Archelaus S. Hunt ;* who conveyed twenty acres of the same tract *May* 1, 1822, to the plaintiff;—that all the mortgage money had been paid by *Warren ;* and that the defendant had entered and still held the land, for condition broken.

The answer admitted the purchase by *Hunt,* to whom the defendant gave further time of payment of the mortgage money ; and that divers small sums had been received of him, and indorsed on the notes. The defendant also stated that in 1820 he had judgment against *Hunt* and one *Fowler* for possession of the land, upon which no *habere facias* had been sued out, nor had the costs been paid ;— that in *February* 1820, he gave further time to *Hunt,* upon receiving of him three promissory notes for the amount of $163,50, then due upon the mortgage, with *Ichabod Hunt* for surety ; but without any agreement or intent to impair his lien by the mortgage ;—that one of these notes had been sued, and judgment recovered thereon, but never satisfied ;—that this judgment, and the other two notes were afterwards put in suit, against the administratrix of *Ichabod Hunt's* estate ; but the estate being small, and the hardship great, the defendant accepted a new note of a hundred dollars in full of all his personal claims against the *Hunts,* without any agreement or intent to impair the mortgage. He claimed to be allowed the costs of all these suits, being $68,92 ; and was willing to allow all monies he had ever received from any of the parties.

The plaintiff, by amendment to the bill, further charged that one *St. Clair* had bought thirty acres, being the residue of the mortgaged premises, in 1820, taking a deed of quitclaim from the defendant, who therein acknowledged himself to have received one hundred dollars as the consideration therefor. But the defendant denied having received any thing from him except a yoke of oxen, for the value of which he had already expressed his readiness to account ; alleging that the residue was doubtless paid to *Hunt,* from whom *St. Clair* purchased the land.

The residue of the facts will sufficiently appear in the opinion of the Court, which was read at the ensuing *November* term in *Cumberland,* as drawn up by

WESTON J. The plaintiff among other things charges and avers in his bill, that the defendant has received full payment of the sum secured to him by mortgage, on the premises in question. This the defendant denies in his answer ; but admits certain payments, which he particularly points out. The general replication has been filed, and proof has been offered on both sides. There is no evidence tending to show that the defendant has actually received in payment a greater sum than he admits, except what arises from the deposition of *Bunker Carter ;* who states that in 1823 or 1824, one *St. Clair* sent or delivered to the plaintiff about thirty bushels of corn, which he understood at the time was to be turned in as part payment of what was due to the defendant on this mortgage. The deponent does not state by, or from whom, he understood this fact. To rebut this proof, the defendant has produced the receipt of *St. Clair*, dated *April* 8, 1824, in which he acknowledges to have received of him twenty four dollars, in full for thirty one bushels of corn. We cannot therefore consider it as proved that the corn was paid or delivered on account of the mortgage.

The plaintiff further charges, that the defendant received the *Hunt* notes in payment of his demand upon *Warren.* This the defendant denies, but says that his agreement with *Hunt* was, that when these notes were paid, his claim upon the land would be discharged. There is no testimony opposed to the answer upon this point, but it is supported by the deposition of *Archelaus S. Hunt. Warren* had sold to *Hunt,* who took the land subject to the mortgage. And it is strongly insisted that even if the *Hunt* notes were received by the defendant as collateral to the mortgage, yet as the security was adequate, the defendant could not relinquish it, or receive by way of compromise a less sum, to the prejudice of the plaintiff. To this argument, two answers have been made. First, that the defendant acted discreetly, both for himself and others interested in the property, in making the compromise. Secondly, that it was made in the presence of the plaintiff, without objection on his part, and that he was the real defendant in the actions compromised, having agreed to indemnify *Hunt.* Mr. *Farnham*, who was of counsel for one of the parties, testifies that the compromise was in

his opinion the best that the defendant could do, the administrator of the solvent signer of the notes defending upon the ground of a want of consideration ; and there being great uncertainty as to the result. But the principal in those notes was grantee of the land, and interested to relieve it from incumbrance, and the express promise of the defendant to account for what might be received on the notes in discharge of the mortgage constituted a sufficient consideration. So that upon the facts as they now appear, if the same could have been then shown, the defence could not have prevailed. But the plaintiff derives his title from *Hunt* the principal signer, and *Henry Farwell* testifies that the plaintiff agreed to indemnify *Hunt*, if called upon to pay these notes. It may be understood that he agreed to pay them, as the consideration, in whole or in part, of his purchase. If so, he lost nothing by the compromise, and had no right to complain of it, whether he consented to it or not. But considering his connexion with the business, as a party interested, his consent and acquiescence in the compromise may well be inferred from the fact, proved by Mr. *Farnham*, that he was present when it was entered into, and made no objection. And we are of opinion, upon the whole case, that the plaintiff cannot hold the defendant to account for more than he has actually received.

The defendant contends that the whole sum received by him ought not to be applied towards the mortgage, but that certain deductions ought to be made therefrom for costs necessarily incurred by him, in the prosecution of his legal remedies. First, twelve dollars and sixty nine cents, being the amount of costs recovered by him in *December*, 1820, in his suit on the mortgage against *Hunt* and one *Fowler*. We are not satisfied that this deduction ought to be made, as the notes given by *Hunt* with a surety, in the *February* following were understood to embrace the whole amount due to the defendant on the mortgage. He claims further to be allowed the costs of the several suits brought by him on the *Hunt* notes.— These costs, in pursuance of the arrangement finally made, the defendant was not to exact, but to pay himself. This it is said was an agreement made with the administrator of *Hunt* the surety, of which the plaintiff has no right to avail himself. But we have held him

bound by the compromise, because being a party in interest, he made no objection but acquiesced in it. We deem it therefore not unreasonable that he should have the benefit of the stipulations then made by the defendant, by which he waived his claim to these costs.

The counsel for the plaintiff urges that he, as the purchaser of part of the land mortgaged, viz. twenty acres, ought to be held liable only for a part of the sum due, the defendant having released to *St. Clair* his lien upon the thirty acres purchased by him. And in support of this ground he cites 1 *Johns. Ch. Reg.* 425. There the mortgagee released a portion of the land mortgaged to the prejudice, and without the consent, of a stranger, who had previously purchased the other portion. If the creditor has two chattels or two estates pledged as collateral security for his debt, and gives up one of them, what he retains still remains pledged for his whole debt. He has only waived part of his own rights, and impaired his own security, which it is competent for him to do. But if the debtor transfer his right to redeem the chattels or the estates in severalty to several purchasers, and the creditor has notice of such transfers, if he give up one of the chattels or release one of the estates to one, without receiving from him his proportion of the sum due, without the consent of the other, it would not be unjust that his lien should be restricted to the proportion which the other ought equitably to contribute. But the release made by the defendant to *St. Clair*, was in confirmation of *Hunt's* conveyance to him. *Hunt* therefore could not complain of it ; and the plaintiff holds under *Hunt* by a subsequent conveyance. And we are of opinion that the land conveyed to him was, and is, liable to the whole mortgage.

For all sums actually paid to the defendant, the plaintiff is to be allowed without deduction. The defendant is to be allowed all interest justly accruing to the time of the decree, and is to be held accountable for the rents and profits of the mortgaged premises to the same period, from the time he took possession. And upon payment to him by the plaintiff of the sum justly found due to him upon

21

these principles, he is to release to the plaintiff all his right, title, and interest to the land in controversy between the parties.

*W. Crosby* and *Greenleaf*, for the plaintiff.

*Allen*, for the defendant.